UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| VENTURE COMMUNICATIONS COOPERATIVE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JAMES VALLEY COOPERATIVE TELEPHONE COMPANY, and NORTHERN VALLEY COMMUNICATIONS, LLC, <br><br> Defendants. | 3:20-CV-3011-RAL <br><br><br> **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Venture Communications Cooperative, Inc. ("Venture") sued Defendants James Valley Cooperative Telephone Company ("James Valley") and Northern Valley Communications, LLC ("Northern Valley"). Doc. 1. Venture is an incumbent local exchange carrier[1] that provides voice and broadband services in rural South Dakota. Doc. 1 at ¶ 1. James Valley is also an incumbent local exchange carrier, while Northern Valley is a competitive local exchange carrier.[2]

---

[1] An incumbent local exchange carrier is a telecommunications company that provided local service before the passage of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996). See 47 U.S.C. § 251(h)(1) (defining an "incumbent local exchange carrier" as the local exchange carrier that provided telephone exchange service with respect to an area as of February 8, 1996 and was a member or the successor or assign of a member of the exchange carrier association as of February 8, 1996).

[2] A competitive local exchange carrier is a telecommunications company that competes with established carriers, usually incumbent local exchange carriers in the area. See 47 C.F.R. § 61.26(a)(1) (defining a "competitive local exchange carrier" as a local exchange carrier that provides some or all of the interstate exchange access services used to send traffic to or from an

Doc. 1 at ¶¶ 9, 10. Both defendant telecommunications companies provide voice and broadband services in South Dakota. Doc. 1 at ¶¶ 9, 10. Venture alleges that Defendants have violated 47 U.S.C. § 220(e), entitling it to relief under 47 U.S.C. §§ 206 and 207. Doc. 1 at ¶¶ 49–56. Venture also alleges that Defendants engaged in tortious interference with business expectancy, fraud, and unfair competition actionable under South Dakota law. Doc. 1 at ¶¶ 57–68. The Defendants have moved to dismiss all of Venture's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 14. For the reasons explained herein, this Court grants in part and denies in part Defendants' Motion to Dismiss.

## I.     Facts Relevant to Motion to Dismiss[3]

Many rural communities across the United States lack access to quality and affordable voice and broadband services. See In re Connect Am. Fund, F.C.C. 18-29, 2018 WL 1452720, ¶ 1 (Mar. 23, 2018). In recognition of this problem, in 2011 the Federal Communications Commission ("FCC") adopted the Connect America Fund ("CAF"), a category of funding for eligible telecommunications companies providing voice and broadband services in underserved areas. Doc. 1 at ¶ 19. Such funding makes it economically feasible for telecommunication companies to provide their services in rural areas where the revenue would otherwise be insufficient to justify the cost of doing business there. Doc. 1 at ¶¶ 1, 2, 19, 20. To determine the amount of CAF support that carriers should receive, the FCC uses a method called the Alternative Connect America Cost Model ("A-CAM"). Doc. 1 at ¶ 20. This method excludes from its support calculations any locations, otherwise known as census blocks, in which an unsubsidized carrier provides voice and

---

end user and does not fall within the definition of "incumbent local exchange carrier" in 47 U.S.C. § 251(h)).

[3] In setting forth facts relevant to the motion to dismiss, this Court of course makes no factual findings at all and must take the well-pleaded allegations of the complaint as true.

broadband services at an appropriate level of speed. Doc. 1 at ¶ 20. The FCC has explained that

the purpose of this restriction is to target support to areas of greater need. Doc. 1 at ¶ 28.

In 2016, the FCC initiated its first A-CAM offering (A-CAM I). Doc. 1 at ¶ 20. For A-

CAM I, the FCC excluded from its support calculations any census blocks in which an

unsubsidized carrier was already providing broadband services at the minimum speed of 10 Mbps

download, 1 Mbps upload (10/1 Mbps), along with traditional voice service. Doc. 1 at ¶ 21. At the

end of 2018, the FCC initiated its second A-CAM offering (A-CAM II). Doc. 1 at ¶ 22. The FCC

in A-CAM II excluded from its support calculations any census blocks in which an unsubsidized

carrier was already providing broadband service at the minimum speed of 25 Mbps download, 3

Mbps upload (25/3 Mbps), along with traditional voice service. Doc. 1 at ¶ 22. The FCC's support

fund decisions under A-CAM I and A-CAM II relied upon information provided in Form 477

submissions. Doc. 1 at ¶ 23. Form 477s are documents that facilities-based broadband providers

must file with the FCC twice annually. Doc. 1 at ¶ 13. Form 477 submissions inform the FCC of

the census blocks in which various providers offer voice and broadband services, as well as the

broadband speeds offered in particular locations. Doc. 1 at ¶ 13.

Venture alleges that defendants James Valley and Northern Valley have "corrupted" and

"weaponized" this process. Doc. 1 at ¶ 3. Northern Valley is wholly owned by James Valley, and

both companies share the same CEO, an individual named James Groft. Doc. 1 at ¶¶ 10, 35.

Significantly, Northern Valley is an unsubsidized carrier. Doc. 1 at ¶ 36. Venture claims that

Northern Valley falsely stated in its 2017 Form 477 that it provides 25/3 Mbps broadband service

in census blocks that are also served by Venture. Doc. 1 at ¶ 36. This representation, if true,

disqualifies Venture from any A-CAM II support in those particular census blocks, which support

Venture would otherwise have been entitled to receive. Doc. 1 at ¶¶ 36, 42.  Allegedly based on

3

misinformation provided by Northern Valley in its 2017 Form 477, the FCC determined that certain census blocks were receiving adequate voice and broadband services from an unsubsidized carrier, and therefore, has reduced its A-CAM II offering to Venture by $20 million over a ten-year period. Doc. 1 at ¶¶ 37, 42.

Venture alleges that Defendants have previously provided false information in their Form 477s. Doc. 1 at ¶ 26. In or around 2015, Defendants purportedly misrepresented their voice and broadband capabilities on a Form 477 filing that was used as a basis for A-CAM I offerings. Doc. 1 at ¶ 26. On April 28, 2016, Interstate Telecommunications Cooperative, Inc. (ITC), one of Defendants' competitors, filed an A-CAM Competitive Challenge with the FCC, claiming that Northern Valley had "erroneously reported [census] blocks as ones in which it offers broadband service." Doc. 1 at ¶ 29. Only then did Northern Valley allegedly acknowledge that it did not provide broadband services in ITC's incumbent telephone area. Doc. 1 at ¶ 30. Thereafter, Northern Valley corrected its data. Doc. 1 at ¶¶ 30, 31. Left uncorrected, Northern Valley's misrepresentation would have had "significant financial repercussions for ITC by reducing the A-CAM I offering it was due." Doc. 1 at ¶ 31. Venture emphasizes that this experience put Defendants on notice of the importance of accurately reporting data in their Form 477s and eliminated the possibility of "innocent mistake" as an explanation for the conduct alleged here. Doc. 1 at ¶¶ 32, 39, 40.

Venture's complaint also avers a longstanding dispute between the parties, allegedly prompting the Defendants to act with the intent of harming Venture. In March 2015, Defendants filed a lawsuit against South Dakota Network, LLC and its individual managers. Doc. 1 at ¶ 34. Both Venture and Defendants are a part of South Dakota Network, LLC, a larger provider network. Doc. 1 at ¶ 33. Randy Houdek, in addition to his role as CEO of Venture, is an individual manager

of South Dakota Network, LLC. Doc. 1 at ¶ 34. Apparently, this litigation proved to be "highly contentious," to the point where Mr. Groft, Defendants' CEO, allegedly "aggressively attacked" Mr. Houdek, Plaintiff's CEO. Doc. 1 at ¶ 35. Venture claims that this animosity between the parties is what motivated Defendants to misrepresent Northern Valley's data on the Form 477, thereby depriving Venture of $20 million worth of support for certain census blocks. Doc. 1 at ¶ 35. Because the FCC eliminated the challenge process from A-CAM I for A-CAM II, Venture was unable to challenge the data in Northern Valley's Form 477 as ITC had done in 2015. Doc. 1 at ¶¶ 24, 41. Having no other remedy, Venture brought this lawsuit. Doc. 1 at ¶¶ 24, 41.

Based on these allegations and others, Venture asserts claims for a violation of the Communications Act of 1934 (Count I); tortious interference with business expectancy (Count II); fraud (Count III); and unfair competition (Count IV). Doc. 1. Defendants offer multiple arguments in support of their Motion to Dismiss, each of which is discussed below. Docs. 15, 17.

## II.    Standard of Review

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at

678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in the original) (citation and internal quotation marks omitted).

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders appearing in the record of the case, and exhibits attached to the complaint." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted); see also Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003) (explaining that courts may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" (citation omitted)). In addition to the allegations in the complaint, this Court has considered Northern Valley's 2017 Form 477, Doc. 15-11, because its contents are the basis for this lawsuit and repeatedly referenced in the complaint. See Doc. 1 at ¶¶ 26, 36–40, 43, 52, 59, 63, 67. Further, this Court has considered several orders issued by the FCC because such orders have been referenced in the complaint, Doc. 1 at ¶¶ 24, 27, or are otherwise matters of public record.[4]

III.  **Analysis**

A.  **Proper Party**

---

[4] Defendants have attached 20 exhibits to Doc. 15 ("Defendants' Memorandum of Law in Support of Motion to Dismiss") and at times argue from a version of facts quite different from what is alleged in the complaint. While this Court can consider matters of public record, this Court in ruling on a motion to dismiss cannot credit the Defendants' view of the facts but must take as true the well-pleaded allegations of the complaint.

This Court starts with James Valley's argument that it is not a proper party to the case and has no derivative liability because Northern Valley, the James Valley subsidiary, was the only entity that filed the Form 477 at issue. "It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998). However, it is also well-established that

> [D]erivative liability cases are to be distinguished from those in which the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of. In such instances, the parent is directly liable for its own actions.

Id. at 64–65 (internal citations and quotations omitted). Venture asserts that it is not alleging that James Valley is liable for the acts of Northern Valley based exclusively on the parent-subsidiary relationship between the two corporations. Doc. 16 at 8. In fact, Venture does not allege a theory of vicarious liability at all. Doc. 1 at ¶¶ 25–42. Rather, Venture claims that James Valley directly participated in filing false information through Northern Valley's Form 477, thereby violating 47 U.S.C. § 220(e) and state tort law. Doc. 1 at ¶¶ 25–42.

Venture alleges facts that, taken together, allow for a reasonable inference that James Valley was a direct participant in the allegedly wrongful acts underlying this litigation. First, Venture alleges that James Groft is both the CEO for James Valley and Northern Valley. Doc. 1 at ¶ 35. This fact alone of course is not enough to show that James Valley was a direct participant. See Bestfoods, 524 U.S. at 69 ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."). However, Venture also highlights the "highly contentious" litigation brought by James Valley and Northern Valley against South Dakota Network, LLC and its individual managers, one of whom is Randy Houdek, Venture's CEO. Doc. 1 at ¶¶ 34–35. In that litigation, Mr. Groft, in his role as CEO for James Valley and Northern

7

Valley, allegedly "aggressively attacked" Mr. Houdek. Doc. 1 at ¶ 35. Assuming this is true, as this Court must, Venture paints a picture in which James Valley and Northern Valley schemed to file false information on the Form 477 to carry out a vendetta against Venture arising from the previous litigation. Thus, at least at this very early stage of the litigation, Venture has alleged enough facts to permit a reasonable inference that James Valley was a direct participant in the wrongdoing.

In any event, Venture has at least alleged sufficient facts to state a plausible claim that James Valley and Northern Valley engaged in a civil conspiracy to violate federal statutes and state tort law. To establish a civil conspiracy, the plaintiff must show five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy. In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997). Civil conspiracy "is not an independent cause of action, but is sustainable only after the underlying tort claim has been established." Sancom, Inc. v. Qwest Commc'ns Corp., 643 F. Supp. 2d 1117, 1132 (D.S.D. 2009) (citation omitted). "By establishing a civil conspiracy, a plaintiff extends liability for the wrongful acts underlying the conspiracy to those actors who did not actively engage in the acts, but conspired in their commission." W. Plains, L.L.C. v. Retzlaff Grain Co., Inc., 870 F.3d 774, 787 (8th Cir. 2017) (cleaned up) (applying Nebraska law).

Although Venture does not specifically allege a civil conspiracy, the facts averred in the complaint create a plausible claim for civil conspiracy between James Valley and Northern Valley. As discussed above, Venture is essentially alleging that James Valley and Northern Valley agreed to intentionally submit false information in Northern Valley's Form 477 to trigger an FCC decision

which deprives Venture of $20 million in A-CAM II support. Whether Venture will be able to

prove up these facts remains to be seen. But drawing all reasonable inferences in favor of the

plaintiff, as this Court must in ruling on a motion to dismiss, James Valley is a proper party to the

action based on either direct liability or civil conspiracy.

### B.  Federal Claim under 47 U.S.C. § 220(e)

Next, this Court considers the Defendants' arguments about whether Venture has a private

cause of action under the Communications Act and in turn whether Venture has alleged sufficient

facts to state a plausible claim under 47 U.S.C. § 220(e), thereby entitling it to relief under 47

U.S.C. §§ 206 and 207. Section 220(e) of the Communications Act provides that:

> Any person who shall willfully make any false entry in the accounts of any book of
> accounts or in any record or memoranda kept by any such carrier, or who shall
> willfully destroy, mutilate, alter, or by any other means or device falsify any such
> account, record, or memoranda, or who shall willfully neglect or fail to make full,
> true, and correct entries in such accounts, records, or memoranda of all facts and
> transactions appertaining to the business of the carrier, shall be deemed guilty of a
> misdemeanor, and shall be subject, upon conviction, to a fine of not less than $1,000
> nor more than $5,000 or imprisonment for a term of not less than one year nor more
> than three years, or both such fine and imprisonment . . . .

47 U.S.C. § 220(e). Here, Venture alleges that Defendants intentionally filed false information in

Northern Valley's Form 477. Doc. 1 at ¶¶ 36–42. In particular, Venture claims that Northern

Valley falsely stated that it offered 25/3 Mbps broadband services in census blocks where in fact

it does not provide such services. Doc. 1 at ¶¶ 36–38. If this is true, such conduct could violate

Section 220(e). See In re Local Competition & Broadband Reporting, 15 F.C.C. Rcd. 7717, 7789

(March 30, 2000) (advising carriers that any "[p]ersons making willful false statements in the

[Form 477] can be punished by fine or imprisonment under the Communications Act, 47 U.S.C.

220(e).").

A violation of Section 220(e) gives rise to a claim for civil remedies under Sections 206 and 207 of the Communications Act. Section 206 states that:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter . . . .

47 U.S.C. § 206. Section 207 provides that:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207. This Court must give effect to the plain meaning of the statutes. DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014) ("[W]here statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (citation omitted)); see also Estate of Farnum v. C.I.R., 583 F.3d 581, 584 (8th Cir. 2009) (discussing general principles of statutory interpretation). By its terms, Section 206 plainly states that "any act, matter, or thing" in violation of the chapter can give rise to a claim for damages by the injured party. Then Section 207 makes clear that the injured party may bring a private cause of action in federal district court to collect damages resulting from any such violation.

Despite the unambiguous language of Sections 206 and 207, Defendants insist that neither section applies to Section 220 because Section 220 prescribes a criminal penalty upon conviction. Doc. 17 at 6–7. However, nothing in Sections 206 and 207 indicate that they are inapplicable to violations of Section 220(e). Rather, Section 206 extends to "any act . . . in this chapter prohibited

10

or declared to be unlawful," and Sections 206 and 220 are in the same chapter. This Court previously has held that Sections 206 and 207 create a cause of action for violations under other sections of the chapter, even when such sections prescribe a penalty of sorts. For example, in Northern Valley Communications, LLC v. Sprint Communications Co. Ltd. Partnership, 618 F. Supp. 2d 1076 (D.S.D. 2009), third-party defendant Global Conference Partners, LLC brought several counterclaims against Sprint Communications Company Limited Partnership, including claims for damages for violations of Sections 201(b) and 202(a) of the Communications Act. Notably, Section 202(c) states that "[a]ny carrier who knowingly violates the provisions of this section shall forfeit to the United States the sum of $6,000 for each such offense and $300 for each and every day of the continuance of such offense." 47 U.S.C. § 202(c). Despite Section 202 having a penalty provision, this Court emphasized that "[i]t is well established that [§§ 206 and 207] confer a private right to bring an action to recover damages for injuries sustained by a violation of §§ 201(b) and 202(a)." Id. at 1082. As both Section 202 and 220 prescribe penalties for enforcement, there is no reason why Section 206 should apply to Section 202 but not to Section 220.

Defendants also argue that Section 206 does not apply to Section 220(e) because of the existence of 47 U.S.C. § 401(c), which provides that it is the duty of the United States attorney, upon request by the FCC, to bring "all necessary proceedings for the enforcement of the provisions of this chapter and for the punishment of all violations thereof." Doc. 17 at 6–7. From Section 401(c), Defendants reason that only the United States attorney may enforce Section 220(e). But Section 401(c) applies to all provisions under this Chapter. Thus, under the Defendants' line of reasoning, no private party could ever proceed under Section 206 as the power of enforcement would always lie exclusively with the United States attorney. As this Court has previously held,

11

that is simply not the case. E.g. Northern Valley Comm'ns LLC, 618 F. Supp. 2d at 1076 ("[i]t is well established that [§§ 206 and 207] confer a private right to bring an action to recover damages for injuries sustained by a violation of §§ 201(b) and 202(a)."). The existence of Section 401(c) authorizing enforcement action by the United States attorney does not negate the private right of action under Sections 206 and 207.

Finally, Defendants argue that even if Section 206 creates a cause of action for violations under Section 220(e), Venture cannot pursue a cause of action against them because Defendants have not been convicted under Section 220(e). Doc. 17 at 8–9. This argument is creative, but Section 206 does not require a conviction as a prerequisite to a private claim for damages. Rather, Section 206 merely states that "[i]n case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable." 47 U.S.C. § 206. In other words, all that is required by Section 206 is a showing that Defendants committed an act proscribed by this chapter. As discussed above, Venture has alleged sufficient facts to plausibly show that Defendants violated Section 220(e).[5] Therefore, Venture's complaint has alleged enough to survive a Rule 12(b)(6) Motion to Dismiss on Count I, and Defendants' Motion to Dismiss Count I is denied.[6]

### C. Tortious Interference with Business Relations or Expectancy

---

[5] Nor does any language within Section 220(e) make Section 206's applicability contingent on a conviction. Rather, a conviction is required only for the imposition of criminal penalties. 47 U.S.C. § 220(e) (stating that a person "shall be subject, upon conviction, to a fine of not less than $1,000 nor more than $5,000 or imprisonment for a term of not less than one year nor more than three years, or both such fine and imprisonment").
[6] Because Venture has stated a valid claim under federal law, this Court has original jurisdiction over this claim under U.S.C. § 1331, and therefore, may exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1376(a).

Defendants argue that Venture has failed to allege sufficient facts to state a plausible claim for tortious interference with business relations or expectancy. "A federal court exercising supplemental jurisdiction over state-law claims applies state substantive law to those claims." Christensen v. Quinn, 45 F. Supp. 3d 1043, 1090 (D.S.D. 2014) (citing Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 n.9 (8th Cir. 2014)). South Dakota substantive law governs the state law claims, and South Dakota recognizes a cause of action for tortious interference with business relations or expectancy. Tibke v. McDougall, 479 N.W.2d 898, 908–09 (S.D. 1992) (discussing the claim of tortious interference with business relationships or expectancies).

Under South Dakota state law, the essential elements for tortious interference with business relations or expectancy are: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted. Hohn v. Spurgeon, 513 F.3d 827, 829 (8th Cir. 2008) (applying South Dakota law); Mueller v. Cedar Shore Resort, Inc., 643 N.W.2d 56, 68 (S.D. 2002). To make out a claim of tortious interference, "there must be a 'triangle'—a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and the third party." Hayes v. N. Hills General Hosp., 590 N.W.2d 243, 248 (S.D. 1999) (cleaned up and citation omitted). Here, there is such a triangle consisting of Venture, the FCC, and Defendants. However, Defendants argue that (1) Venture cannot have a valid business expectancy in a government subsidy as a matter of law, and (2) Venture has not alleged sufficient facts to show that Defendants had knowledge of Venture's expectancy or that Defendants intentionally interfered with such expectancy. This Court will address each argument in turn.

1.     **The Existence of a Valid Business Relationship or Expectancy**

First, Defendants argue that Venture's claim fails as a matter of law because it does not,

and cannot, have a valid business expectancy in a government subsidy. Doc. 15 at 16.  Because

this Court must apply state substantive law in exercising supplemental jurisdiction over state law

claims, the question becomes whether South Dakota recognizes a valid business expectancy in a

government subsidy.  The Supreme Court of South Dakota has never addressed this issue directly.

"Where there is no case directly on point by a state's highest court," this Court must "look to

'relevant state precedent, analogous decisions, considered dicta, and any other reliable data' to

determine how the Supreme Court of [South Dakota] would construe [South Dakota] law." In re

W. Iowa Limestone, Inc., 538 F.3d 858, 866 (8th Cir. 2008) (quoting HOK Sport, Inc. v. FC Des

Moines, L.C., 495 F.3d 927, 935 (8th Cir. 2007)).

The Supreme Court of South Dakota has repeatedly framed the tortious interference claim

as extending not only to business relationships, but also business "expectancies." See Hayes, 590

N.W.2d at 247–48 (recognizing that "valid business relationships and expectancies are entitled to

protection from unjustified interference." (quoting Landstrom v. Shaver, 561 N.W.2d 1, 18 (S.D.

1997))). But see Tibke, 479 N.W.2d at 910 (Sabers, J., dissenting) (noting that the court "sets out

a five-part test for tortious interference with a business relationship or expectancy" and "then

ignores portions of this test.").  To constitute a valid business expectancy, the plaintiff must have

an expectancy to receive an economic advantage or pecuniary benefit from a third party.  See

Hayes, 590 N.W.2d at 248 ("The tort also protects a party's interest in stable economic

relationships" and "[f]or this tort to occur . . . it need not be intended that there be a contract.");

Landstrom, 561 N.W.2d at 16 ("[T]o establish a 'valid business relationship or expectancy,' there

ha[s] to be a showing of a . . . business relationship between the plaintiff and an identifiable third

party."); see also Gieseke ex. rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 844 N.W.2d 210, 218 (Minn. 2014) (noting that a "cause of action for interference with business relationships protects an interest in the reasonable expectation of economic advantage." (internal quotation marks omitted)); Stewart Title Guar. Co. v. Am. Abstract & Title Co., 215 S.W.3d 596, 603 (Ark. 2005) ("Any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy." (citing Restatement (Second) of Torts § 766B cmt. c (Am. Law. Inst. 1979))). Further, it must be reasonably probable that the business expectancy would have come to fruition but for the defendant's conduct. See Hayes, 590 N.W.2d at 250. See also Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assoc., Architects & Planners, Inc., 821 N.W.2d 1, 3 (Mich. 2012) (stating that to make out a claim for tortious interference with a business relationship or expectancy, "the expectancy must be a reasonable likelihood or probability, not mere wishful thinking."); Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. 2006) ("The valid business expectancy requirement involves more than a mere subjective expectancy — it must be a reasonable expectancy . . . .").

The existence of a valid business relationship or expectancy depends upon the facts and the nature of the relationship between the plaintiff and the third party. Hayes, 590 N.W.2d at 250 (emphasizing that whether "it is reasonably probable that prospective economic advantage would have been realized but for the defendant's conduct . . . . depends on the totality of circumstances." (cleaned up and internal citations omitted)). The Supreme Court of South Dakota has recognized that whether a valid business relationship or expectancy exists is a question of fact to be resolved by the jury. Id. at 250 n.6 ("Examination of the appropriate criteria in this factually driven cause of action is appropriately left to the jury."). This Court predicts that the Supreme Court of South Dakota would allow a claim for tortious interference with a business expectancy in a government

15

subsidy to proceed under Venture's allegations that it would have received $20 million over ten years but for NVC's intentionally false filing. Venture, among other things, would have to show both that it expected to receive a pecuniary benefit and that the subsidy was reasonably probable but for the tortious interference. See Hayes, 590 N.W.2d at 248–50.

Defendants cite two cases in which courts outside of South Dakota declined to recognize a claim for tortious interference where the defendants allegedly interfered with the plaintiffs' relationship with a government agency. The first case is Carlson v. Roetzel & Andress, No. 3:07-cv-0033, 2008 WL 873647 (D.N.D. Mar. 27, 2008). There, the plaintiff alleged that the defendants had tortiously interfered with his ability to obtain workers compensation benefits by falsely asserting that he was an independent contractor rather than an employee. Id. Examining the elements for tortious interference under North Dakota law, which are the same as those under South Dakota law, the District of North Dakota concluded that tortious interference with business relations simply did not apply on the facts of the case. Id. at *14. The court noted that the plaintiff had "cited no authority in support of his novel argument that the tort of unlawful interference with business applies to his claim for workers compensation benefits." Id.

The second case that Defendants rely upon is Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471 (E.D. Pa. 2010). In that case, the plaintiff, a hair salon, claimed that the defendant, a competitor, wrongfully interfered with its ability to transfer its business license to a new location. Id. at 476. In rejecting the plaintiff's claim, the court noted that the tort only covers relations of pecuniary value, not personal, social, or political relations. Id. at 487. Further, the Court stated that "[t]ortious interference is a 'business-centered tort' that cannot be established by alleging interference with the relationship between a business and its government regulator." Id.

16

Neither case, however, warrants the conclusion that there can never be a valid business expectancy in a government subsidy, and indeed neither case addressed the situation of a plaintiff in a business reliant on and receiving in the past a government subsidy. Neither <u>Carlson</u> nor <u>Pierre & Carlo, Inc.</u> applied a categorical bar on claims for tortious interference where the plaintiff is claiming interference in its ongoing subsidy from a public entity. The expectancy in a government subsidy is quite different from claims of entitlement to workers compensation benefits or the change of licensure status. Unlike a claim for workers compensation or the mere transfer of a business license, a government subsidy is by its very nature both business-centered and pecuniary. After all, the purpose of the FCC subsidy at issue is to make it economically feasible for telecommunication companies to provide their services in rural areas where the revenue would otherwise be insufficient to justify the cost of doing business there. Doc. 1 at ¶ 1 ("Plaintiff and defendants rely on federal funds to make it economically feasible to provide voice and broadband services to customers in their authorized sparsely populated service areas.") <u>See also id.</u> at ¶¶ 2, 19, 20. Even Defendants acknowledge this to be the case, noting that "[i]n the United States, universal access to essential utilities, including telephone service, is made possible through a series of government subsidies that make it economically possible for utility providers in rural areas to offer services at prices on par with those in higher-density urban areas." Doc. 15 at 2. In sum, the government subsidy at issue is sufficiently distinguishable from the claimed expectancies in <u>Carlson</u> and <u>Pierre & Carlo, Inc.</u> that neither case is persuasive authority.

The Defendants also claim that their position is supported by the South Dakota Supreme Court's decision in <u>Matter of Certification of Question of Law From United States Dist. Court, Dist. Of S. Dakota, S. Div.</u>, 931 N.W.2d 510 (S.D. 2019). In that case, this Court certified a question to the Supreme Court of South Dakota, namely whether South Dakota recognizes a cause

of action for tortious interference with inheritance or expectancy of inheritance. The Supreme Court of South Dakota responded in the negative. To be sure, tortious interference with inheritance is a claim distinct from tortious interference with business relations or expectancy. Compare Restatement (Second) of Torts § 774B (Am. Law Inst. 1979) (describing tortious interference with inheritance or gift), with Restatement (Second) of Torts § 766B (Am. Law Inst. 1979) (describing tortious interference with prospective contractual relation). The Court in Matter of Certification noted that the circumstances under which it adopted the tort of intentional interference with prospective contractual relations were very different from those in the case before it. In particular, the Court chose to recognize tortious interference with prospective contractual relations because "there was a lack of other remedies available to redress such wrongs in the business context" whereas there are several alternative remedies available to plaintiffs when third parties interfere with their inheritances or gifts such as contesting a will through a probate proceeding or imposing a constructive trust. Id. at 516–17. The Court also emphasized that the "pursuit of a contractual or business relationship differs because it often involves upfront economic costs that could never be recouped absent a claim for wrongful interference with the prospective contractual relationship." Id. at 517.

The South Dakota Supreme Court's reasoning for declining to "expand tort liability" in Matter of Certification does not apply here. Id. at 518. But for its federal cause of action under 47 U.S.C. §§ 206 and 207, Venture would have no avenue to redress the wrongs alleged in its complaint. There appears to be no other avenue for redressability under South Dakota state law, because as discussed below, Venture cannot make out a claim for fraud. Because the availability of state law remedies could be lacking for parties similarly situated to Venture, this Court predicts that the Supreme Court of South Dakota would recognize a cause of action for tortious interference

18

with business expectancy for reasonably probable governmental subsidies to which an entity serving an underserved rural market would be entitled if not for the intentionally false filing of a defendant. As such, Venture has alleged sufficient facts for a plausible claim of tortious interference with a business expectancy.

### 2.    Knowledge of the Expectancy and Intentional and Unjustified Interference

Next, Defendants argue that Venture has failed to allege facts sufficient to meet the second and third elements of tortious interference requiring that the Defendants had knowledge of the expectancy and that they intentionally and unjustifiably interfered with such expectancy. Doc. 15 at 18–21. To be liable for tortious interference under South Dakota law, the plaintiff must show that the defendant knew about the business relation or expectancy between the plaintiff and the third party. Sancom, 643 F. Supp. 2d at 1129 (applying South Dakota law). Cf. Restatement (Second) of Torts § 766 cmt. i (Am. Law Inst. 1979) ("To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract."). Further, the plaintiff must show that the defendant committed an intentional and unjustified act of interference with such business relation or expectancy. St. Onge Livestock Co., Ltd. v. Curtis, 650 N.W.2d 537, 541–42 (S.D. 2002). "The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766B cmt. d (Am. Law Inst. 1979).

In its complaint, Venture alleges several facts, that if true, plausibly show that Defendants knew that Venture would have been entitled to A-CAM II support and that Defendants acted intentionally to deprive Venture of such support. First, Venture emphasizes that neither A-CAM

offerings were made to carriers for census blocks in which an unsubsidized carrier was providing

adequate voice and broadband services. Doc. 1 at ¶¶ 20–22. Venture alleges that Defendants falsely

reported that Northern Valley provided adequate services in certain census blocks because

Defendants bore a grudge against Venture due to prior litigation involving South Dakota Network,

LLC. Doc. 1 at ¶¶ 33–35. Further, Venture alleges that Defendants were especially aware of the

consequence of false Form 477 filings, highlighting an incident in 2015 involving Northern Valley

and its competitor ITC. Doc. 1 at ¶¶ 26–32. In that instance, Northern Valley allegedly

misrepresented its broadband coverage, and Northern Valley knew that the FCC as a result was

going to reduce the CAF funding that ITC was due. Doc. 1 at ¶¶ 26–32. The complaint thereby

alleges facts allowing for a reasonable inference that Defendants knew Venture would be entitled

to CAF funding and would only be disqualified from such funding if Northern Valley, the only

unsubsidized carrier in the census blocks at issue, misrepresented its broadband capabilities in such

locations. The complaint pleads sufficient facts on Defendants' knowledge and intent.

Nonetheless, Defendants contend that Venture's story is not plausible. In support of this

contention, Defendants direct this Court to consider three events in 2018: (1) that on February 19,

2018, Northern Valley filed its 2017 Form 477, see Doc. 15-11; (2) that on March 14, 2018, the

FCC adopted an order proposing the creation of A-CAM II, see In re Connect Am. Fund, F.C.C.

18-29, 2018 WL 1452720 (Mar. 23, 2018); and (3) that on December 13, 2018, the FCC adopted

an order finalizing the details under which A-CAM II will be offered to eligible carriers, see In re

Connect Am. Fund, 33 FCC Rcd. 11893 (Dec. 13, 2018). Doc. 15 at 5–7, 18–21. From this

timeline, Defendants ask this Court to infer that it could not have known of Venture's expectancy

in receiving A-CAM II support at the time that Northern Valley filed its Form 477 because the

FCC had not yet created A-CAM II or finalized the details of A-CAM II. Doc. 15 at 19–21.

While public records corroborate this information such that it can be considered on a motion to dismiss, this Court must still construe all reasonable inferences in favor of the non-moving party. <u>Retro Television Network, Inc.</u>, 696 F.3d at 768–69 (explaining that "courts must accept a plaintiff's factual allegations as true" and "constru[e] all reasonable inferences in favor of the nonmoving party."). Since 2011, the FCC has targeted support to the census blocks that need it the most. Doc. 1 at ¶¶ 4, 19; Doc. 16 at 21–22. While the terms of A-CAM I and A-CAM II varied, the aim of the FCC remained to avoid administering CAF funding to census blocks in which an unsubsidized carrier already provided adequate services. Doc. 1 at ¶¶ 20–22; Doc. 16 at 22–23. As early as 2016, the FCC announced that it would rely on the data contained in Form 477s to make its funding determinations. Doc. 1 at ¶ 23; Doc. 16 at 23. In short, A-CAM II was not created in a vacuum. Doc. 16 at 24–25. Drawing all reasonable inferences in favor of the non-moving party Venture, this Court finds that the complaint plausibly alleges that Defendants had the requisite knowledge about the ramifications of filing a false Form 477 on CAF funding and the requisite intent to interfere with Venture's expected subsidy. In sum, Venture has alleged sufficient facts to state a claim for tortious interference with business relations or expectancy. Defendants' Motion to Dismiss as to Count II is denied.

**D. Fraud**

Next, this Court must determine whether Venture has alleged sufficient facts to state a plausible claim for fraud. Under South Dakota law, the plaintiff must allege the following to state a claim for actionable fraud:

> That a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

<u>Stabler v. First State Bank of Roscoe</u>, 865 N.W.2d 466, 477 (S.D. 2015).

Under South Dakota law, there is a close relationship between fraud and a statutory deceit claim. Mash v. Cutler, 488 N.W.2d 642, 653 (S.D. 1992). The Eighth Circuit in Kent v. Omaha Life Ins. Co., 484 F.3d 988 (8th Cir. 2007), considered whether a complaint stated a viable deceit claim under South Dakota law. In Kent the plaintiff brought an action for statutory deceit under SDCL § 20-10-1 against an insurance company after their representative allegedly gave inaccurate testimony at the plaintiff's criminal trial. The Eighth Circuit noted that the deceit statute gives plaintiffs a cause of action when they have been willfully deceived by another and have altered their positions based on the deceit. Id. at 997. The Court affirmed the dismissal of the plaintiff's deceit claim because there is "no case in which South Dakota courts have applied this statute in favor of a plaintiff when the misleading statements have been relied upon by *a third party rather than the plaintiff*." Id. (emphasis added). Although Venture brings a claim for common law fraud, not statutory deceit, statutory deceit is "declaratory of the common law and comprehend[s] an intention to mislead." Mash, 488 N.W.2d at 653. First-party reliance is not only a requirement of statutory deceit in South Dakota, but also of a common law or statutory fraud claim. See Stabler, 865 N.W.2d at 477 (requiring as an element of a fraud claim that "he [meaning the plaintiff] did in fact rely on [the misrepresentation] and was induced thereby to act to his injury or damage.").

In this case, Venture alleges that Defendants made a false statement to the FCC, a third party. Doc. 1 at ¶ 65 ("Defendants statements were made for the unlawful, improper, and fraudulent purpose of inducing *the FCC* to deny funding to the plaintiff. *The FCC* reasonably relied on these misrepresentations . . . .") (emphasis added). As Venture's complaint makes clear, it was the FCC — not Venture — that relied upon that statement in the FCC's decision to award Venture $20 million less in federal subsidies than what it allegedly would have received otherwise.

22

Venture argues that actionable fraud does not require first-party reliance, pointing to <u>Nodak</u>

<u>Oil Co. v. Mobil Oil Corp.</u>, 533 F.2d 401 (8th Cir. 1976). However, its reliance upon <u>Nodak Oil</u>

<u>Co.</u> is misplaced. In <u>Nodak</u>, the Eighth Circuit considered whether the plaintiff must prove that the

defendant acted fraudulently to make out a claim for tortious interference with business relations.

<u>Id.</u> at 406 (noting that under North Dakota law, an action for wrongfully inducing a breach of

contract may be maintained only by proving that the breach was induced by direct fraud or coercion

on the part of the defendant). The Eighth Circuit in <u>Nodak</u> considered what is required to prove a

claim of tortious interference with business relations, not whether a fraud claim requires first-party

reliance.

Similarly, Venture's citation to <u>Bridge v. Phoenix Bond & Indemnity Co.</u>, 553 U.S. 639

(2008) misses the mark. <u>Bridge</u> was a civil RICO case predicated on mail fraud. <u>Id.</u> at 641. In

<u>Bridge</u>, the defendants argued that because the alleged pattern of racketeering activity consisted of

mail fraud, plaintiffs must show that they relied on the defendants' fraudulent misrepresentations.

<u>Id.</u> at 648. Defendants' argument was grounded in the fact that common law fraud requires first-

party reliance. The Supreme Court rejected their argument, noting that:

> Congress chose to make mail fraud, not common-law fraud, the predicate act for a
> RICO violation. And the mere fact that the predicate acts underlying a particular
> RICO violation happen to be fraud offenses does not mean that reliance, *an element
> of common law fraud*, is also incorporated as an element of a civil RICO claim.

<u>Id.</u> at 653 (emphasis added) (internal quotations omitted). <u>Bridge</u> actually undermines Venture's

argument because in <u>Bridge</u> the Supreme Court recognized that reliance indeed is an element of

common law fraud.

Under South Dakota law, the plaintiff must allege first-party reliance to state a claim for

fraud. The only reliance alleged here is third-party reliance, and as such, Venture's fraud claim

fails as a matter of law. Because Venture has failed to allege sufficient facts on the essential

elements of fraud, this Court need not consider whether Venture has satisfied the heightened

pleading standard for a fraud claim under Rule 9(b) of the Federal Civil Rules of Procedure. As to

Count III, Defendants' Motion to Dismiss is granted.

### E. Unfair Competition

Finally, this Court must consider whether Venture has stated a plausible claim for unfair

competition. The South Dakota Supreme Court has noted that the "[t]he tort of unfair competition

does not have specific elements;" rather, "it describes a general category of torts which courts

recognize to protect commercial interests." Qwest Comm'ns Corp. v. Free Conferencing Corp.,

837 F.3d 889, 898 (8th Cir. 2016) (citing Setliff v. Akins, 616 N.W.2d 878, 887–88 (S.D. 2000)).

Thus, "damages for unfair competition results [sic] from satisfying the elements of an underlying

tort." Setliff, 616 N.W.2d at 887–88. Encompassed in the category of torts constituting unfair

competition is tortious interference with business relations or expectancy. Id. at 888 (citing United

Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982)). As discussed above, Venture has

alleged sufficient facts to state a claim for tortious interference with business relations or

expectancy, so to that limited extent, Venture has stated a claim for damages within the general

category of unfair competition. See Copperhead Agric. Products, LLC v. KB Ag Corp., LLC, No.

CIV. 18-4127, 2019 WL 7038241 at *7 (D.S.D. Dec. 20, 2019) (holding that because the plaintiff's

claim for tortious interference survives the defendant's motion to dismiss, it serves as a basis for

the plaintiff's unfair competition claim). The unfair competition claim is coterminous with and

subsumed within the tortious interference with business expectancy claim; there is no separate

unfair competition claim, so Count IV can be dismissed to the extent that it seeks to state any

separate cause of action beyond tortious interference with business relations or expectancy.

### IV.   Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion to Dismiss, Doc. 14, is granted as to Counts III and IV of Venture's complaint and denied as to Counts I and II.

DATED this  2nd  day of October, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

25