UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| **VENTRURE COMMUNICATIONS COOPERATIVE, INC,**<br>    Plaintiff,<br><br>vs.<br><br>**JAMES VALLEY COOPERTIVE TELEPHONE COMPANY, AND NORTHERN VALLEY COMMUNICATIONS, LLC,**<br>    Defendants. | 3:20-CV-03011-RAL<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL |

In this discovery wrangle, two telecommunication companies have moved to compel the production of certain materials from a third one. The companies have gone to great lengths to stake out their positions but, like most disagreements of this kind, neither is right on everything, leading to a split decision.

BACKGROUND

Venture Communications Cooperative, Inc. ("Venture") sued James Valley Cooperative Telephone Company ("James Valley") and Northern Valley Communications, LLC ("Northern Valley"), seeking compensatory and punitive damages. Venture and James Valley are incumbent local exchange carriers[1]

---

[1]*See* 47 *U.S.C*. §251 (h)(1) (defining an "incumbent local exchange carrier" as a telecommunications company that provided local service before the passage of the 1996

(continued. . .)

that provide broadband services in the rural parts of South Dakota. Northern Valley is a competitive local exchange carrier.[2] Venture claims that it was denied about twenty million dollars in federal funds because James Valley and Northern Valley knowingly misrepresented information in filings to the Federal Communications Commission ("FCC"). Their conduct, Venture says, blocked its ability to receive support funds for voice and broadband in its service area and violated the Communications Act of 1934. Venture likewise maintains that James Valley and Northern Valley engaged in tortious interference with business expectancy, fraud, unfair competition, and an actionable civil conspiracy.

After several attempts to resolve the document production issues failed and the parties reached an impasse, James Valley and Northern Valley moved to compel. In it, they request that Venture must produce three sets of documents: (1) materials depicting Venture's network and subscribers in the overlapping service areas it has with Northern Valley ("Overlapping Area"); (2) Venture's cost separations studies for 2017 and 2018; and (3) communications that Venture and its counsel had with a third-party consultant. Venture opposes the motion, arguing that the first part of it is moot, the

---

Telecommunications Act).

[2] *See* 47 C.F.R. §61.26 (a)(1) (defining a "competitive local exchange carrier" as a local telecommunications company that competes with established carriers, usually incumbent local exchange carriers in a service area).

second involves irrelevant information, and the third asks for privileged communications. The District Court referred the motion to this Court to rule on.

## DISCUSSION

**A. Standard**

The Federal Rules of Civil Procedure pertaining to discovery "are to be broadly and liberally construed in order to fulfill discovery's purposes of providing [the] parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.' "[3] A party may obtain discovery of any non-privileged matter relevant to any claim or defense.[4] "Information within [the] scope of discovery need not be admissible in evidence to be discoverable."[5] Before parties are required to open the doors of discovery, there must be some "threshold showing of relevance."[6] "Relevancy…encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"[7] Discovery must also be "proportional to the needs of the

---

[3] *See Marook v. State Farm Mut. Auto Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)).

[4] *See* Fed. R. Civ. P. 26(b)(1).

[5] *Id.*

[6] *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

[7] *Leichtnam v. American Zurich Ins. Co.*, No. 5:15-CV-05012-JLV, 2018 WL 4701353
(continued. . .)

3

case."[8] Once the requesting party has established that the evidence sought is relevant, the burden shifts to the opposing party who must "show specific facts demonstrating that the discovery is not relevant or how it is overly broad, burdensome, or oppressive."[9]

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material," the party bears the burden of providing a factual basis for withholding the materials.[10] The asserting party satisfies its burden by providing a detailed privilege log stating the basis of the claimed privilege of each document in question, together with an explanation from its counsel.[11] The burden of establishing that the privilege applies is harder when it relates to documents and communications developed by a third-party technical consultant retained for business purposes and to help counsel provide legal advice.[12]

---

at *2 (D.S.D. Sept. 30 2018) (quoting *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007)) and *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Kirshenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 481 (D.S.D. 2012).

[10] Fed. R. Civ. P. 26(b)(5)(A); *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D. S.D. 2015); *Murphy v. Kmart Corp.*, 259 F.R.D. 421, 428 (D.S.D 2009).

[11] *See Rabushka ex rel U.S. v. Crane Co.* 122 F.3d 559, 565 (8th Cir. 1997).

[12] *See e.g., Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 10-14 (D.D.C. 2021).

### B. Overlap Area Information

#### 1. Subscriber Map

Venture has already produced a map file in KMZ (Google Earth) format depicting its fiber network and building locations in the Overlap Area. The map renders James Valley and Northern Valley's request for "a subscriber loop network map"[13] moot.[14]

#### 2. **Venture Subscribers in the Overlap Area and Their Service Speeds**

James Valley and Northern Valley ask for the physical addresses of Venture's broadband subscribers in the Overlap Area as of December 31, 2017, in either CSV (comma-separated values) or Excel format, and the service speeds for those subscribers. Both parties seek to know where Venture's subscribers resided and the speeds of their service, at the time of Venture's Alternative Connect America Model ("A-CAM") II election, to provide a better understanding of what deployment obligations Venture would have had to make and incur had it received funding from the FCC's A-CAM II program. Insight into what facilities Venture had in place in the Overlap Area and who they were connected to is necessary to comprehend what Venture would have had to construct had it received the expected A-CAM II funding. Production of the requested

---

[13]Def. Mem. at 14 & n. 18 (June 7, 2021).

[14]*See Collins v. St. Paul Fire and Marine Ins. Co.,* No. 5:15-CV-05047-JLV, 2016 WL 5794722 at \*\* 5-7 (D.S.D. Sept. 30, 2016); *United States v. Morris Inc.,* No. 4:14-CV-04131-LLP, 2016 WL 4098592 at \*3 (D.S.D. July 28, 2016).

information is at least relevant to damages and to James Valley and Northern Valley's ability to evaluate the legitimacy of any damages model Venture and its experts may present.

Venture's arguments to the contrary are unavailing. Not all of Venture's service area had fiber, with broadband speeds of 25/3 Mbps or more, at the end of 2017. Notably, Venture sought virtually identical information, requiring James Valley and Northern Valley to produce a list of all of its subscribers, including the services and locations, in the Overlap Area as part of discovery. That the documents requested may also contain confidential information, some of which may not affect the case, is not a valid reason to withhold the documents when they are relevant, or may lead to relevant matters, and there is a confidentiality agreement with an Attorney's Eyes Only provision.

### 3. Cost Separations Studies

James Valley and Northern Valley move to compel Venture to produce a copy of it's 2017 and 2018 cost separations studies. The companies want Venture's FCC Part 36/69 studies that it must prepare and submit to justify the rates it charges. The 2017 study was alluded to in the A-CAM II analysis of John Staurulakis, Inc. ("JSI"), Venture's consultant, to help Venture predict what the economic impact would be of accepting A-CAM II funding. The cost studies look to be relevant to analyzing Venture's outlay if it had received A-CAM II funding and been required to meet the performance yard sticks

in the Overlap Area. The 2018 study, submitted before deployment occurred, would seemingly be the most relevant.

Venture's relevancy objection rings hollow. The Court is satisfied that James Valley and Northern Valley have met their burden of showing the 2018 cost separations study is relevant, as that term is broadly construed. Refusing to produce this study because it is a single, integrated document is an unacceptable response. And removing portions of the study could change its meaning and make the same incomplete and unreliable. Any confidentiality concerns Venture may have can be properly addressed by marking the study Attorney's Eyes Only under the protective order, not keeping or stripping pieces out of it. The redacted version of the 2018 Toll Cost Separations Study is not a passable substitute because it omits all of the cost information James Valley and Northern Valley need and does not include the supporting materials that show how costs are applied. All of the 2018 cost study should therefore be produced.

### C. Privileged Communications with JSI

The second part of James Valley and Northern Valley's motion involves Venture's claims of privilege and work product protection over communications among Venture, its consultants at JSI, and its counsel. These communications are from January to June 2019 when JSI was helping Venture to evaluate the impact of James Valley and Northern Valley's claims of 25/3 broadband service in the Overlap Area. The issue is whether the communications are privileged or protected, because JSI—a non-employee—participated in them.

7

1. **Attorney-Client Privilege**

The rub between the two sides requires consideration of the "employee equivalent" doctrine—an outgrowth of the United States Supreme Court's decision in *Upjohn Co. v. United States*.[15] In that case, the Supreme Court held that where an attorney represents a corporation, the corporation's attorney-client privilege extends beyond those persons who "control" the corporation and includes other employees with whom the attorney must consult with to advise the corporation.[16]

The Eighth Circuit has applied *Upjohn* to cover communications between partnership counsel and outside consultants.[17] The appeals court reasoned that " too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely."[18] According to the court, the consultant at issue was "involved on a daily basis with the principals of [the partnership] and on [the partnership's] behalf in the unsuccessful development that serve[d] as the basis for th[e] litigation," and was thus "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to

---

[15] 449 U.S. 383 (1981).

[16] *See id.* at 391-92.

[17] *See In re Bieter Co.* 16 F.3d 929, 937-38 (8th Cir. 1994).

[18] *Id.*

8

understand [the partnership's] reasons for seeking representation."[19] The court concluded that the consultant "was in all relevant respects the functional equivalent of an employee."[20]

Several courts have followed the Eighth circuit's lead.[21] James Valley and Northern Valley recognize the "employee equivalent" extension of the *Upjohn* doctrine but try to distinguish it, maintaining that "JSI's relationship with Venture is simply not on par with the facts of the [Eighth Circuit's decision]."[22]

---

[19]*Id.* at 938 (citing *Upjohn,* 449 U.S. at 389).

[20]*Id.*

[21]*See e.g., Berisha v. Lawson,* 973 F.3d 1304, 1317-20 (11th Cir. 2020); *United States v. Graf,* 610 F.3d 1148, 1158-59 (9th Cir. 2010); *Tinian Systems, LLC v. Core Campus Columbia I, LLC,* C-A No. 3:15-CV-1102-JFA, 2016 WL 11643760 at ** 1-2 (D.S.C. Aug. 19, 2016); *A.F. v. Providence Health Plan,* 173 F.Supp. 3d 1061, 1082-84 (D.Or. 2016); *In re Flonase Anti-Trust Litigation,* 879 F. Supp. 2d 454, 457-60 (E.D. Pa. 2012); *Western Resources, Inc. v. Union Pacific Railroad Co.,* No. 00-2043-CM, 2002 WL 181494 at ** 6-7 (D. Kan. Jan. 31, 2002); *Royal Surplus Lines Ins. v. Sofamor Danek Group,* 190 F.R.D. 463, 469-72 (W.D. Tenn. 1999); *see also F.T.C. GlaxoSmithKline,* 294 F.3d 141, 148 (D.C. Cir. 2002) (concluding that the privilege extended to the attorney-client communication shared by a drug manufacture with its public relations and government affairs consultants where "the consultants acted as part of team with full-time employees regarding their particular assignment" and dealt with issues that were "completely intertwined with [the drug manufacture's] litigation and legal strategies"); *Schaeffer v Gregory Village Partners, L.P.*, 78 F.Supp. 3d 1198, 1203-05 (N.D. Cal. 2015) (holding that outside consultant providing regulatory and public relations advice, and interacting directly with potential opponents in litigation, was the "functional equivalent" of an employee of the defendant property owner).

[22]Def. Mem. at 28.

9

But by James Valley and Northern Valley's own admissions, "JSI's role in relation to the underlying litigation" was "critical,"[23] "advising Venture on issues related primarily to understanding the FCC's process for distributing A-CAM II funding and trying to help Venture maximize it's A-CAM II funding throughout the relevant time period."[24] As Venture's representative, JSI communicated directly with James Valley and Northern Valley and their CEO to obtain their cooperation and assistance from them.[25] Venture learned from JSI of James Valley and Northern Valley's Overlap Area service claims and their effect on Venture's ability to secure A-CAM II funding. Without JSI's information and guidance, Venture's counsel could not fully evaluate the predicament Venture was in and provide it with sound guidance.

JSI's relationship with Venture is the kind that justifies application of the privilege. JSI was intimately involved, on Venture's behalf, "in the transaction that [wa]s the subject of legal services" and "possess[ed] the very sort of information [] the privilege envisions" Venture's counsel should have to render informed legal advice on how to proceed.[26]

---

[23]Def. Mem. at 8.

[24]Def. Mem. Ex.18.

[25]Def. Mem. at 23.

[26]*Upjohn*, 449 U.S. at 397-98.

James Valley and Northern Valley contend that "JSI is not the functional equivalent of a Venture employee" because "JSI exercised neither management control over Venture nor was it "involved on a daily basis" with running Venture."[27] Their contention though goes against the Supreme Court's rejection of the "control group" test and the Court's recognition that non-managerial employees may be considered part of the corporate client for purposes of the privilege.[28] And the contention is that odds with the Eighth Circuit's principal holding that the privilege extends to "non-employees who possess a significant relationship to the client and the client's involvement in the transaction that is the subject of legal services," and who therefore "have the relevant information needed by corporate counsel" to advise the client.[29]

Settled Eighth Circuit precedent controls here and requires the denial of James Valley and Northern Valley's production request. The attorney-client privilege applies to communications made among JSI, Venture, and Venture's counsel and the production of the same. On this record, JSI was the functional equivalent of Venture's employee. Those communications fell within the scope JSI's duties and were made at Venture's behest and to seek legal advice for Venture.[30]

---

[27]Def. Mem. at 27.

[28]*See Upjohn*, 449 U.S. at 389, 392.

[29]*Bieter*, 16 F.3d at 938.

[30]*See id*. at 939-40.

## 2. Work-Product Doctrine

Regardless, the work-product doctrine protects the disclosure of the documented communications James Valley and Northern Valley seek. Venture anticipated litigation with James Valley and Northern Valley and did not augment the risk of them gaining access to its confidential claims discussions by including JSI in those discussions.

The work-product doctrine is a "qualified" privilege that protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, … or agent)."[31] "At its core, the [] doctrine shelters the mental processees of the attorney, providing a privileged area within which he can analyze and prepare his client's case " and protects both "material prepared by agents for the attorney as well those prepared by the attorney himself."[32]

Like other qualified privileges, the privilege derived from the work-product doctrine may be waived.[33] A litigant may, for example, waive work-product protection by revealing or placing the work-product at issue during litigation.

"[W]ork-product protection is not as easily waived as the attorney-client privilege."[34] Because the attorney-client privilege is designed to protect confidentiality,

---

[31] Fed. R. Civ. P. 26(b)(3)(A).

[32] *United States v. Nobles,* 422 U.S. 225, 238-39 (1975).

[33] *See Nobles,* 422 U.S. at 239.

any disclosure beyond the inner circle is inconsistent with the privilege.[35] By contrast, work-product protection applies to adversaries, "so only disclosing material in a way inconsistent with keeping it from an adversary waives [the] protection."[36] The vast majority of circuit courts adhere to the general principle that the voluntary disclosure of work product waives the protection only when the disclosure is made to an adversary or is otherwise inconsistent with the purpose of the work-product doctrine itself—to protect the adversarial process.[37]

` Thus, "disclosure of work-product to a third party does not waive the protection unless [the] disclosure is made to an adversary in litigation or 'has substantially increased the opportunities for potential adversaries to obtain the information.' "[38]

In resisting Venture's invocation of the work-product doctrine James Valley and Northern Valley point to, and talk at length about, internal communications among JSI employees from January 2019, including a comment from one employee that Venture

---

[34]*United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997)).

[35]*See id.*

[36]*Id.*

[37]*See Sanmina Corp.*, 968 F.3d 1120 & n. 7.

[38]*Sanmina Corp.*, 968 F.3d at 1121(quoting 8 *Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure* §2024 (3d ed. 2020)).

13

should "slow down the sue sue train."[39] That same month, another JSI employee reached out to James Valley and Northern Valley, on Venture's behalf, to discuss their claims and Venture's potential loss of A-CAM II funding as a result of the claims.[40]

In January 2019, Venture believed it had legal claims against James Valley and Northern Valley and may be in litigation with them soon. Venture expressed these sentiments to JSI and asked it to communicate with James Valley and Northern Valley and see if there was a way to resolve things. Over the next five months or so, Venture and its counsel engaged in conversations with JSI about many of the same matters now at issue.

This sequence of events requires application of the work-product doctrine. The communications among Venture, its counsel, and JSI about matters in anticipation of litigation were not "inconsistent with the maintenance of secrecy" from Venture's adversaries—James Valley and Northern Valley—to defeat the protections afforded by the doctrine and require disclosure.

### 3. Privilege Log Descriptions

Contrary to James Valley and Northern Valley's assertions, Venture's privilege log provides decent enough descriptions and clarity about what the documents being withheld are, or concern. The log is as descriptive, if not more so, than James Valley and

---

[39]Def. Mem. 5-6.

[40]*See* Pl. Mem. Ex. 6 (June 15, 2021).

14

Northern Valley's own privilege log. That said, Venture's log was sufficient to provide James Valley and Northern Valley with as good an understanding as possible of the "nature of the documents…not produced or disclosed… without revealing [privileged or protected information]."[41]

## CONCLUSION

James Valley and Northern Valley's motion to compel Venture to produce a map of the network and subscribers in the Overlap Area is moot. Venture has already provided such a map. James Valley and Northern Valley though are entitled to receive a list of Venture's subscribers in the Overlap Area and the service speeds for those subscribers—as of December 31, 2017. The requested information is relevant and within the scope of allowable discovery. The same is true of Venture's 2018 cost separations study. But Venture's documented communications with its counsel and JSI are privileged and need not be disclosed.

## ORDER

For these reasons, and based on the record before the court, it is ORDERED that James Valley and Northern Valley's motion to compel is granted in part and denied in part. The motion is granted to the extent it seeks production of:

1. The physical addresses of Venture's broadband subscribers in the Overlap Area as of December 31, 2017;

---

[41] Fed. R. Civ. P. 26(b)(5)(A)(ii).

2. Venture's subscribed service speeds, including download/upload speeds, for all of its broadband subscribers in the Overlap Area as of December 31, 2017;

3. Venture's 2018 cost separations study.

But the motion is denied in all other respects.

Dated this 20th day of July 2021, at Pierre, South Dakota.

BY THE COURT:

*[signature: Mark A. Moreno]*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**